**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CAPITAL CASE**

CIVIL ACTION NO. 99-678-C

PARRAMORE LEE SANBORN,                                              PETITIONER,

V.                    <u>MEMORANDUM OPINION AND ORDER</u>

PHIL PARKER, WARDEN,                                                RESPONDENT.

\* \* \* \* \* \* \* \* \*

  This matter is before the court on Parramore Lee Sanborn's motion for funds (R. 160). Sanborn was convicted and sentenced to death for his crimes in 1984. His conviction has been upheld throughout the Kentucky and Federal appellate processes, and his petition for certiorari was denied October 31, 2011. As Sanborn has exhausted his judicial remedies, he now seeks funds so that he might undergo a neuropsychological evaluation and brain scan in support of his petition for clemency. Because the court finds pursuant to 18 U.S.C. § 3599(f) that the requested funds are reasonably necessary for Sanborn's representation, the court will grant the motion.

  This court is empowered under 18 U.S.C. § 3599 to appoint counsel to assist Sanborn in preparing his state clemency petition and to compensate counsel for that representation. *See Harbison v. Bell*, 556 U.S. 180, 129 S.Ct. 1481, 1490 (2009); *Baze v. Parker*, 632 F.3d 338, 342 (6th Cir. 2011). Section (f) of the same statute authorizes this court to order the payment of fees and expenses

for an expert "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant . . . ."

The funds requested by Sanborn, to be used to obtain a neuropsychological evaluation and brain scan, are reasonably necessary to ensure that the Governor of Kentucky has sufficient information in deciding whether to grant clemency. Sanborn is a 66 year-old man with a history of multiple head injuries, childhood developmental issues, and extremely low intellectual functioning. These functional deficits, while insufficient to cause him to be found incompetent to stand trial, lead to questions regarding his mental state, both now and at the time he committed his crimes. Despite multiple suggestions by various experts that Sanborn receive a full neuropsychological evaluation to determine the presence or absence of brain damage, Sanborn has never received such an examination. Though Sanborn was examined by the state psychiatric center in 1984 and 1991 to determine his competency to stand trial, neither of these examinations was performed by a neuropsychologist, nor did either exam include any tests, such as a CAT scan or an MRI, that would reveal physical damage or abnormalities in Sanborn's brain. This information may lead to a more accurate diagnosis and would not duplicate information already available to the Governor. *See Fautenberry v. Mitchell*, 572 F.3d 267, 270 (6th Cir. 2009). Under the circumstances, the funds requested are reasonably necessary for Sanborn's representation in his petition for clemency. *See* 18 U.S.C. § 3599(f).

The Warden argues that the requested tests are not reasonably necessary because any additional evidence uncovered by the tests cannot pertain to argument on Sanborn's guilt or sentence. To a certain extent, this is true. As the Warden states, "issues related to [Sanborn's] guilt, competence to stand trial, criminal responsibility at the time of the crime and the appropriateness of the death sentence have been repeatedly addressed, and . . . these issues are no longer subject to argument." Respondent's brief at 4. However, a bid for clemency is not reliant upon or restricted to matters argued before the courts, *see McQueen v. Patton (In re Sapp)*, 118 F.3d 460, 465 (6th Cir. 1997); *Harbison* at 1490, and is not restricted to cases where the guilt of the petitioner is in doubt. Clemency proceedings serve as "the 'fail safe' in our criminal justice system," *Harbison* at 1490 (quoting *Herrera v. Collins*, 506 U.S. 390, 415 (1993)), and "the clemency power can correct injustices that the ordinary criminal process seems unable or unwilling to consider." *Dretke v. Haley*, 541 U.S. 386, 399 (2004) (Kennedy, J., dissenting). In this light, the issue of Sanborn's neuropsychological state, including whether or not he has some sort of brain damage or abnormality, is indeed relevant to his clemency petition, even though Sanborn was twice judged competent to stand trial. It is reasonably necessary for Sanborn to be fully evaluated in order for the Governor to be able to make an educated decision on whether to grant clemency.

The Warden also raises procedural arguments against Sanborn's motion, arguing that the issue is not ripe for decision and that Sanborn has not followed

procedural requirements provided by Kentucky law.  Sanborn's motion for funds is ripe. He has been sentenced to die, and his petition for certiorari to the Supreme Court of the United States has been denied.  That an execution date is not currently scheduled and that Kentucky executions are currently, but not indefinitely, judicially stayed are immaterial to the current motion.  The Kentucky Constitution at § 77 provides that the Governor may "commute sentences;" and this clemency power is nowhere made contingent on the scheduling of an execution date. *See In re Sapp* at 465.  Also, because the Governor's clemency power is derived directly from the Kentucky Constitution and is an extrajudicial process, it is unnecessary for Sanborn to tie this request to a motion for stay of execution under KRS § 431.2135.

      Accordingly,

      **IT IS ORDERED** that the motion (R. 160) is **GRANTED**.  Sanborn is authorized pursuant to 18 U.S.C. § 3599(f) to expend up to $7,500, as per his request, for the requested expert services; however, Sanborn must seek prior approval of the expert's hourly rate and total expected compensation prior to any services being rendered for which an expert expects to be compensated.

Signed on December 9, 2011

Jennifer B. Coffman, Judge
United States District Court